U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

MAR - 9 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DAN E. BUTLER, M.D. | : | DOCKET NO. 2:07 CV 0564 |
| VS. | : | JUDGE MINALDI |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment, filed by the defendant Unum Life Insurance Company of America (hereinafter "Unum") [doc. 19]. The plaintiff, Dr. Dan E. Butler, filed an Opposition [doc. 21]. Unum filed a Reply [doc. 22].

## FACTS

Dr. Butler is a former orthopedic surgeon who became disabled due to carpal tunnel syndrome. He stopped performing surgeries after November 30, 2005, and ceased treating patients on January 1, 2006, when he closed his practice.[1] Dr. Butler is the named insured on a business overhead expense (hereinafter "BOE") insurance policy (hereinafter "the Policy") issued by Unum with an effective date of April 28, 1987.[2] The Policy provides a maximum monthly expense benefit of $20,118, with a total maximum expense benefit of $241,416 for "covered overhead expenses."[3]

The Policy "will pay the overhead expense benefit amount in any month after the Insured has

---

[1] Pl.'s Ex. C (Dr. Butler Dep.) p. 107.

[2] Pl.'s Ex. B (Policy).

[3] *Id.* at 3.

1

satisfied the Elimination Period" where the Insured satisfies four requirements.[4] The Policy defines "covered overhead expenses" as:

> the [I]nsured's share of the usual and customary business expenses that are not excluded below which he or his business incurs on a regular basis and are essential to his established business operation. Covered overhead expenses which are paid on other than a monthly basis (such as covered insurance premiums, taxes on business property and covered professional fees) will be prorated to their monthly costs and included in the monthly covered overhead expenses....covered overhead expenses are normally paid from earnings that depend on the Insured's presence and individual effort; they continue during disability; and they are ones for which he was liable in the normal conduct of the business before the disability began. Examples of overhead expenses which normally meet this definition are:
>
> > Regular monthly mortgage or lease payments on business property
> > Taxes on business property
> > Installment costs of furniture and equipment
> > Utilities
> > Premiums for malpractice, property or liability insurance
> > Janitorial and maintenance services
> > Accounting, legal, billing and collection fees
> > Professional and trade dues and subscriptions
> > Miscellaneous supplies
> > Postage
> > Employee salaries and employer-paid benefits not excluded above[5]

The Policy will pay BOE when "the Insured is totally disabled or experiences at least a 20% loss of net income in his regular occupation as a result of a present injury or sickness."[6] This provision was changed from the former provision whereby the Policy would pay BOE if "he experiences at least

---

[4] *Id.* at 8.

[5] *Id.* at 7.

[6] *Id.* at 4.

a 20% loss of net income in his regular occupation as a result of a present injury or sickness."[7] The Policy defines "totally disabled" as "injury or sickness restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation."[8]

Dr. Butler first filed a claim on December 22, 2005. He then prepared a supplemental claim statement on February 1, 2006. On July 17, 2006, Unum informed Dr. Butler it was sending him a check for $52,165 for payment under the Policy for expenses from January 29, 2006 through June 1, 2006.[9] On August 21, 2006, Unum paid Dr. Butler an additional $16,145 for expenses incurred from June 1, 2006 through August 1, 2006.[10] Finally, Unum paid $12,908 for expenses incurred in September 2006.[11] In total, Unum paid Dr. Butler $81,218 under the Policy. On January 5, 2007, Dr. Butler filed suit, seeking payment of the maximum benefit under the Policy.[12]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of

---

[7] *Id.* at 8.

[8] *Id.*

[9] Def.'s Ex. C (July 17, 2006 letter).

[10] Def.'s Ex. D (August 31, 2006 letter).

[11] Def.'s Ex. E (December 19, 2006 letter).

[12] Compl. [doc. 1].

3

pleadings and discovery that demonstrate the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant, however, satisfies this burden, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## LAW

The parties both presume that Louisiana applies. Unum reaches this conclusion without discussion and Dr. Butler reaches this conclusion because this Court has diversity jurisdiction under *Erie v. Railroad Co. v. Tompkins*, 304 U.S. 64 (1939). Louisiana law does govern, but for a different reason.

A federal district court sitting in diversity applies the choice of law rules of the state in which it sits to determine which state's law governs the dispute before the court. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). In Louisiana, the law of the state where the insurance policy was issued generally governs the insurance policy. *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, —F.3d—, No. 07-31061, 2009 WL 130187, at *5 n.2 (5th Cir. 01/21/2009). The Fifth Circuit has, however, also held that when there is no conflict between the law of the forum state and the law of

4

the state where the policy was issued, "no conflict-of-laws-analysis is necessary and the forum law applies." *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

Here, the Policy was issued and delivered in Oklahoma,[13] and thus Oklahoma law governs unless there is no conflict, in which case Louisiana law applies. The parties have not identified a conflict between relevant Louisiana and Oklahoma law, and this Court does not find a conflict. *See, e.g., Bank of Wichitas v. Ledford*, 151 P.3d 103, 111 (Okla. 2006) (noting that Oklahoma courts interpret contracts to give effect to the parties' intention at the time of contracting, contract terms are to be given their plain and ordinary meaning, and when a contract is unambiguous it is to be interpreted from its four corners).

Having found no conflict between the relevant Louisiana and Oklahoma law, the forum law applies. As the Fifth Circuit recently stated:

> Under Louisiana law, "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ.Code Ann. art. 2045. This involves a two-step process: The court must first look to the plain text of the contract to determine whether its meaning is clear and unambiguous. *See* La. Civ.Code Ann. art. 2047 ("The words of a contract must be given their generally prevailing meaning."). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

*Am. Elec. Power Co.*, 2009 WL 130187, at *2.

## ARGUMENTS

The issue presented by Unum in its summary judgment motion is "whether expenses incurred by Dr. Butler after he closed his practice constitute compensable business expenses under the Policy." Unum notes that the policy language is clear and unambiguous, and therefore summary

---

[13] Pl.'s Ex. B (Policy).

5

judgment is appropriate because contract interpretation is a question of law.

First, Unum argues that Dr. Butler's expenses after January 1, 2006 are not compensable business expenses under the Policy because they were incurred after he stopped treating patients and therefore are not essential to his established business operation. Unum relies upon *Principal Mutual Life Insurance Compant v. Toranto*, 3:95-2841, 1997 WL 279751 (N.D. Tex. 05/15/1997).

In *Principal*, Dr. Toranto, a plastic surgeon who became disabled, entered into an agreement with another plastic surgeon who would take over his operations, receive the income from operations, and pay "all of the expenses in connection with the management and operation of the Practice." *Id.* at *1, *5. Despite this agreement, Dr. Toranto alleged that he continued to incur monthly business expenses in excess of $24,000 and sought reimbursement pursuant to his overhead expense insurance policy, which defined "covered overhead expenses" as Dr. Toranto's "share of the usual and customary monthly business expenses [he is] responsible for in the operation of [his] business." *Id.* at *6, *2.

The court concluded that this provision was "specifically designed to pay benefits for overhead expenses incurred while the insured continued to operate his trade or business," and because Dr. Toranto no longer operated his surgical practice, he would no longer incur expenses under this policy. *Id.* Moreover, the court found that once Dr. Toranto signed the agreement, he no longer operated his practice. *Id.* at *6 (noting that the other plastic surgeon paid rent, utility charges, lease payments on equipment, the cost of supplies, and salary and benefits for employees).

Second, Unum argues that expenses incurred while performing collections are not compensable.[14] Unum relies upon *Wilson v. Monarch Life Insurance Co.*, 971 F.2d 312, 313 (9th

---

[14] Unum's third argument is that Dr. Butler's continued role as medical director of TriParish Rehab does not entitle him to claim business expenses under the Policy. Dr. Butler does not address this in Opposition. Pursuant to the Policy, this Court finds that Dr. Butler's

6

Cir. 1992), which concluded that a chiropractor's overhead expense policy did not cover expenses incurred from collecting on accounts receivable after the insured sold his practice and the state issued an order forbidding him from practice, because the insured had ceased "running his office or business."

In Opposition, Dr. Butler argues that based upon a plain reading of the Policy, BOE are owed to an insured who is totally disabled, because the Policy states that it will pay the BOE for an insured who "is totally disabled or experiences at least a 20% loss of income in his regular occupation as a result of present injury or sickness." Dr. Butler also points out that Unum made several BOE payments for expenses incurred after January 1, 2006, and now seeks to revise its Policy interpretation to exclude any expense incurred after January 1, 2006.

Next, Dr. Butler distinguishes the cases upon which Unum relies. Dr. Butler notes that the courts in *Principal* and *Wilson* found an insurer was not obligated to pay BOE after the insured sold his business or practice, because there would no longer be any expenses essential to an established business operation.

Dr. Butler relies upon *Uno v. Provident Life & Accident Insurance Company*, 191 P.3d 738 (Or. Ct. App. 2008). In *Uno*, the physician became totally disabled, placed his medical license in retirement status, cancelled his malpractice insurance, but hoped to reactivate his license and resume practice in the future. *Id.* at 739. Accordingly, the plaintiff maintained his medical office and employed a part-time employee who performed administrative tasks including billing, mailing patient charts, paying bills, and storing financial and patient records. *Id.* The physician sought to recover overhead expenses pursuant to his policy, which promised to pay overhead expenses while

---

"regular occupation" at the time of the Elimination Period was an orthopedic surgeon, not the medical director of TriParish Rehab. Therefore, if Dr. Butler is eligible for BOE it is for expenses arising out of his orthopedic practice.

he was totally or partially disabled. *Id.* After the Oregon trial court found the plaintiff was not "currently active in the...medical practice," it concluded he was not owed BOE benefits. *Id.* at 739-40. The appellate court reversed and rejected Provident's argument that the plaintiff was not "operating" his business unless he was practicing medicine.

The court found that the operation of a business "includes performing actions to continue plaintiffs' business, without regard to whether patients are still being treated." *Id.* at 741 (quoting Webster's Third New Int'l Dictionary, which defines operation as "doing or performing of a practical work or of something involving practical application of principles or processes often experimentally or as part of a series of actions"). "The work is a 'business' or part of plaintiff's 'profession' because it is directed to some purposive end, the continuance of a professional practice, and because the billing and collection efforts continue normal activities that were part of plaintiff's professional practice." *Id.* (noting that the policy did not exclude business continuation expenses, and contemplates the incurring of expenses by a disabled insured over a long period of time, given that the monthly benefit was $10,000 and the maximum benefit was $120,000). Further, the court distinguished another Oregon case, *Richardson v. Guardian Life Insurance Company*, 984 P.2d 917 (Or. App. 1999),[15] where the physician sold his practice and the court denied benefits, concluding that expenses incurred after a business sold were "obviously not business continuation expenses." *Id.* at 742.

The *Uno* court placed significance on the fact that the plaintiff still owned the medical practice and intended to continue it in the future. *Id.* at 742. In reversing the trial court, however, the *Uno* court did not imply that the plaintiff would ultimately be successful and questioned whether

---

[15] Unum cites *Richardson* in support of its argument. Def.'s Mem. in Support of Mot. For Summ. J., at 7.

"the incurring of business continuation expenses by plaintiff for a long period after his disability was 'usual and customary' in the practice of urology, given his lack of recovery and the ongoing loss of patients to other physicians." *Id.*

In Reply, Unum argues that *Uno* is distinguishable because the physician in *Uno* intended to re-open his practice, whereas Dr. Butler did not, making his situation comparable to the physicians who had sold their practices and were ineligible for overhead expenses.

## ANALYSIS

At the outset, this Court agrees that the Policy is unambiguous. The plain language of the Policy demonstrates that Unum's summary judgment motion must fail. The Policy clearly provides that Unum will pay the BOE for an insured who "is totally disabled or experiences at least a 20% loss of income in his regular occupation as a result of present injury or sickness." Unum cannot now argue that Dr. Butler is no longer "operating" his practice because he is totally disabled and cannot perform surgeries, and therefore it does not owe BOE. The Policy clearly provides that Unum will pay BOE for an insured who becomes totally disabled and unable to perform the "material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation." The Policy language therefore envisions paying BOE to an insured who is totally disabled and unable to perform the duties of his regular occupation.

Moreover, the cases upon which Unum relies to exclude coverage—*Principal* and *Wilson*—are distinguishable because the insured in those cases sold his business or practice.[16] An insurer is no longer obligated to pay BOE when the insured sells the practice and the insured himself is no longer obligated for BOE. Here, although Dr. Butler stopped treating patients and closed his practice, he

---

[16] Moreover, neither case is binding on this Court nor particularly persuasive, as *Principal* is an unpublished case from the Northern District of Texas, and *Wilson* is a Ninth Circuit case.

did not sell his practice and kept his office open in a limited capacity to complete billing, give patient referrals, and perform other administrative tasks.

Although this case is distinguishable from the *Principal* line of cases, it is also distinguishable from *Uno*, because the physician in *Uno* intended to re-open whereas Dr. Butler formally announced the closing of his practice. Despite this difference, the Court finds that the plain meaning of "operation of a business of profession" includes operating expenses incurred in the winding-down of a business because the activities were normal activities that were part of Dr. Butler's professional practice and are specifically listed as being covered operating expenses in the Policy. Furthermore, if Unum wished to exclude operating expenses incurred during the winding down of a practice, it could have done so. This conclusion is bolstered by the fact that the Policy will pay overhead expenses up to $20,118 monthly, with a total maximum benefit of $241,416, while the insured is totally disabled. Clearly, the Policy envisions the possibility of payment over a long period of time.

Whether Dr. Butler will ultimately prevail on his claim shall be determined at the bench trial scheduled for April 13, 2009. This Court finds an issue of fact as to whether "the incurring of business continuation expenses by plaintiff for a long period after his disability was 'usual and customary' in the practice of [orthepedic surgery]," given the announced closure of his business effective January 1, 2006. *See Uno*, 191 P.3d at 669; accordingly,

IT IS ORDERED that the motion for summary judgment, filed by Unum [doc. 19], is hereby DENIED.

Lake Charles, Louisiana, this ___8___ day of _____March_____, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE